## COX v. PYRAMID LIFE INS. CO.

### No. 13015.

Court of Civil Appeals of Texas. Dallas.
April 5, 1941.

Rehearing Denied May 2, 1941.

Taylor, Irwin & Irwin and Ivan Irwin, all of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, and Katherine W. Halterman, of Kansas City, Mo., for appellee.

LOONEY, Justice.

R. Marshall Cox, father of Perry Lee Cox, deceased, as Administrator of his estate, filed this suit against Pyramid Life Insurance Company, a Kansas corporation, to recover $2,500 alleged to be due on a life insurance contract, applied for by Ross Byrum upon the life of the deceased, an infant ten years of age at the time of the application, and at the time of his death.

John D. Townsend, who represented the Insurance Company in several counties of the Rio Grande Valley of Texas, with headquarters at Harlingen, on February 25, 1937, took Byrum's written application for the insurance. However, plaintiff does not base his suit upon the written application, or upon the undelivered policy written in pursuance thereof, but grounded same upon an alleged parol offer of insurance by the agent Townsend, and its acceptance on March 12, 1937. After plaintiff introduced his evidence and rested, in response to a motion filed by the defendant, the court instructed a verdict in its favor, and rendered judgment that plaintiff take nothing, from which, this appeal was prosecuted.

Plaintiff contends that the evidence raised an issue of fact as to the authority of the agent Townsend, to make a parol contract, binding upon the defendant, and as to whether a parol contract of insurance was entered into, hence the court erred in directing a verdict for the defendant. The defendant on the other hand contends that, the court did not err in the respects mentioned, in that, the agent Townsend was without authority to enter into a parol agreement for insurance on behalf of the defendant; that

plaintiff was estopped by the terms and conditions of the application for insurance, dated February 25, 1937, limiting the authority of the agent, to rely upon anything done or said by him in excess of his express authority; that no premium was paid to the Company for the insurance, and, that, the application was never approved, nor a policy issued by the defendant prior to the death of Perry Lee Cox, the subject of insurance; nor was the policy ever delivered to any one.

As the parties disagree in regard to the probative value of the evidence, we will set forth the facts deemed material: At the time involved, Mr. Townsend represented the defendant Company under an agency contract dated July 6, 1936, providing, among other things: "That, subject to the requirements and provisions of this agreement, the Agent is hereby appointed to represent the Company in soliciting applications for Life Insurance in said Company, in collecting premiums for the first year of insurance upon Policies issued upon such applications, and in transacting such other business for the Company as may be required of him by the Company; but the Agent has no authority to make, alter, vary or discharge any contract, or extend the time of payment of premiums; or to waive or extend any obligation or condition, or to take payment of first year premiums other than in current funds; or to incur any liability in behalf of the Company; or to deliver any policy unless the applicant therefor is at the time in good health and insurable condition, or to receive any money due or to become due the Company, except on policies and receipts sent him for collection. * * * General Provisions and Regulations. Delivery of Policies. The Agent shall not deliver any Policy unless or until the applicant (and/or child proposed for insurance) is alive and in good health and has fully paid the first premium therefor. Any policy not so delivered must be returned to the Company upon demand, but in any event not later than thirty days from its date of issue. No Policy may be delivered more than thirty days from its date of issue nor after demand for its return has been made by the Company."

On February 25, 1937, Ross Byrum, uncle by marriage of Perry Lee Cox, the ten year old boy, made a written application to the defendant for a nonmedical juvenile life insurance policy for $2,500, on the life of the boy; Mrs. Byrum, wife of the applicant and aunt of the boy, was named as primary beneficiary and R. Marshall Cox, father of the boy, contingent beneficiary. The application contains the following: "I agree: that this application, together with the answers and explanations given to the above several questions, shall form the exclusive basis of the agreement between me and the Pyramid Life Insurance Company, Kansas City, Missouri, * * *. That the policy hereby applied for shall not be in force unless actually delivered to and accepted by me during the lifetime and continued good health of the child, and the first premium thereon actually paid in cash to said Company, or its duly authorized representative. * * * I declare, represent and agree on behalf of myself and every person, firm or corporation who may have or claim any interest in any insurance issued on this application: * * * No agent or any other person except the President, Vice-President, Secretary, Actuary, Assistant Secretary, or Assistant Actuary of the Company has power to make, modify or discharge any contract, or to bind the company in any way, or to waive any of the Company's rights or requirements, and that no such modification or waiver shall be valid unless in writing and signed by one of the foregoing officers; * * *. The Company shall incur no liability under this application until it has been received, approved and the policy issued and manually delivered to and received by me during my lifetime and good health, and that of the child, and the full first premium stipulated in the policy has actually been paid in cash to and accepted by the Company during the lifetime and good health of myself and of the child for whom application is made, in which case, such policy shall take effect as of the effective date of issue as recited therein. * * * "

After being executed, the application was forwarded to the defendant and was received by it at its home office in Topeka, Kansas, on February 27, 1937, but no premium was paid, or accompanied the application. After considerable delay incident to a proper investigation of the matter, the defendant Company, through its proper official, approved the application on March 19, 1937, and typed the policy; but it never left the home office and was not delivered to any one, for the reason that, on March 21, 1937, the

defendant Company received information that the little boy, the subject of insurance, lost his life on March 18, 1937, with several hundred others, in what is known as the "New London School Disaster," in Rusk County, Texas, caused by a gas explosion.

■ In view of these undisputed facts, we do not think it can correctly be said that, an insurance contract on the life of the little boy, Perry Lee Cox, was consummated prior to his death, and, if not, nothing done thereafter can be given that effect. The doctrine generally recognized is that, a contract of life insurance consummated after the death of the person whose life constitutes the subject matter of the contract, is invalid. See 37 C.J. 385, Sec. 49; Bankers Lloyds v. Montgomery, Tex.Com.App., 60 S.W.2d 201, 202; Dickey v. Continental Casualty Ins. Co., 40 Tex.Civ.App. 199, 89 S.W. 436, 438, and National Life Ins. Co. v. Manning, 38 Tex.Civ.App. 498, 86 S.W. 618, 621.

However, plaintiff contends that a valid parol contract was entered into on March 12, 1937; that on that date, Townsend, the agent, collected from the Byrums the first year's premium for the insurance, issued a receipt therefor, and assured applicant that, the insurance would be in force from that date, provided the application, which was then pending at the home office, was passed upon and approved, and this without delivery of the policy.

This insistence is predicated upon the following facts: Prior to January 1, 1936, Mr. Hoyt, then President of the Company, while at Harlingen, instructed Mr. Townsend and other agents that, where the first year's premium was paid, to assure the applicant that the insurance would be in force from the date of the application, provided the contract was subsequently approved and the policy issued as applied for, plaintiff insists that the first year's premium was paid in the following manner, that is, Mr. Townsend, the Agent, being indebted to Mrs. Byrum in the sum of $100, evidenced by a promissory note, it was agreed that he would be credited on the note with the amount of the first year's premium, which was thought to be $57.90, although lacking a few cents, and Townsend executed a receipt for the first year's premium and assured the applicant that the insurance would be in force from that date (March 12, 1937), "provided the application for insurance was passed upon or was approved in the home office as applied for, and issued as applied for." No cash was passed in the transaction, no report of same was made to the defendant Company, nor was it apprised of the facts until after the death of the little boy.

The record discloses that Mr. Hoyt severed his connection with the Company on January 1, 1936, and it was thereafter, on July 6, 1936, that Townsend and defendant Company entered into the agency contract under which he was acting in 1937 when the transactions involved took place. The agency contract, among others, contained the following provision: "All previous communications between the parties hereto, verbal or written, are hereby abrogated and withdrawn, and this Agreement, when duly signed and approved, constitutes the Agreement between the parties hereto in so far as future business is concerned, and no modification of this accepted Agreement shall be binding on the parties hereto, or either of them, unless in writing hereon duly accepted by the Agent and approved by the proper officers of the Company."

■ In view of this provision, it would seem that, the verbal authority conferred by Hoyt upon Townsend prior to 1936, to effectuate interim insurance on the payment of the first year's premium, was abrogated. However, if it be assumed—all that plaintiff could possibly contend for—that, on March 12, 1937, Townsend was authorized to enter into the parol agreement for interim insurance and that, the evidence, to all intents and purposes, showed that the first year's premium was paid, the question remains, Was a parol contract for interim insurance consummated prior to the death of the child? We do not think so. In the first place, Townsend was not authorized to give any assurance that the insurance would become effective until the application was approved and the policy issued at the home office. His testimony is that he so stipulated in the parol agreement made on March 12, his language being that, the insurance would be in force from that date, "provided the application for insurance was passed upon or was approved in the home office as applied for, and issued as applied for." The facts are undisputed that Perry Lee Cox lost his life on March 18, 1937, in the New London School Disaster; in ignorance of that fact, the application was passed upon and a policy written at the home office of the

defendant on 19th day of March, but the policy never left the home office; hence was never delivered to any one. So, we do not think that, under any view of the facts, a contract of insurance on the life of the little boy, either written or verbal, was ever consummated, or that the evidence raised an issue to that effect. It follows that, in our opinion, the court did not err in instructing a verdict for the defendant, hence the judgment below is affirmed.

Affirmed.