**Robert A. MANN, Appellant,**

v.

**Jack PERRY et al., Appellees.**

**No. 600.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Sept. 13, 1972.

854

Max Garrett, George Payne, Garrett & Ledbetter, Finis E. Cowan, Baker & Botts, Houston, for appellant.

Joe H. Reynolds, White, Allen & Cook, Houston, Ewell Strong, Strong, Pipkin, Nelson, Parker & Powers, Jack Moore, Moore, Moore & Landrey, Beaumont, for appellees.

## ON MOTION FOR REHEARING

TUNKS, Chief Justice.

This is a suit for specific performance of an option agreement or, alternatively, for damages for breach thereof. The appellant, Robert A. Mann, the optionee, was plaintiff in the trial court. The appellee, Jack Perry, was the optionor and was defendant in the trial court. The other appellees, who also were defendants in the trial court, are First Security National Bank of Beaumont, Beaumont, Texas, Continental Bank of Houston, Houston, Texas, Walter M. Mischer, Perry Michael Wells and Gerald Hicks Smith. Those latter defendants were alleged to have wrongfully interfered with and prevented the performance by Perry of the option agreement. The trial court, upon motions filed, rendered summary judgment for the defendants and Mann has appealed.

Several years before 1967 Jack Perry and Willie Wells, acting together, bought controlling shareholder's interest in the Citizens State Bank and Trust Company of Kilgore, Gregg County, Texas. That bank had issued an outstanding 7500 shares of voting stock. Perry acquired 2835 of those shares. Willie Wells acquired, in the name of Welcome Oil Co., of which he was pres-

ident, 945 shares. Mr. Byrum L. Anderson arranged the transaction by which Perry and Willie Wells acquired such shares. The arrangement of such transactions for commissions was part of Anderson's regular business activities. Since the date of such acquisition Perry and Willie Wells had jointly exercised shareholder's control over the bank. Their joint action in exercising such control was assured by a buy and sell agreement between them as to such shares.

The appellant Mann is engaged extensively in the banking business. He is director and chairman of the board of the Sabine National Bank of Port Arthur, Texas. Such bank will sometimes herein be called the Sabine bank. He is officer, director and/or substantial shareholder in a number of other banks.

In February of 1967 Perry was indebted to the Exchange Bank and Trust Company of Dallas, Texas to the extent of about $650,000.00. Such bank will sometimes herein be called the Dallas bank. His 2835 shares of the Kilgore bank stock were pledged to secure such indebtedness. The note representing such debt was past due. The evidence indicates that Perry was in some financial difficulty. The officers of the Dallas bank were anxious that his loan there be discharged or moved. He and Willie Wells had asked Byrum L. Anderson to look for a buyer of their Kilgore bank shares. Acting on such request Anderson proposed to Mann that he consider such purchase. Mann indicated an interest and Anderson arranged a meeting between himself, Mann and Perry to discuss the transaction.

The meeting was held at Perry's home in Houston on February 6, 1967. At such meeting an agreement was reached. Perry signed an option agreement, handwritten by Mann, in the following language:

"February 6, 1967.

For and in consideration of the sum of ten and no/100 ($10.00) dollars and

other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I, Jack Perry, of the county of Harris, and state of Texas do hereby grant, bargain, sell and convey to Robert A. Mann of the County of Tyler, State of Texas, an option to purchase two thousand eight hundred and thirty-five (2,835) shares of the common capital stock of the Citizens State Bank & Trust, of Kilgore, Gregg County, Texas for a total consideration of Six hundred fifty thousand ($650,000.00) and no/100 dollars. This option to purchase is granted for a period of thirty days from date hereof. The total shares of common capital stock of the Citizens State Bank and Trust Company of Kilgore outstanding is warranted to be seven thousand five hundred (7,500). It is understood and agreed that seller, Jack Perry, is to pay any and all commissions in connection with this transaction when and if it is consummated.

/s/ Jack Perry

Witness:
/s/ B. L. Anderson"

On the same occasion Mann signed the following agreement, also handwritten by him:

"February 6, 1967

I, Robert A. Mann, agree to arrange for a line of credit to Jack Perry of Harris County, Texas in the amount of one hundred fifty thousand and no/100 ($150,000) dollars for a period of one year with interest payable semi-annually. Interest shall be at the rate of four (4%) per cent when line is supported by a three hundred thousand ($300,000.00) dollar demand deposit. Interest shall be at the rate of five and one half (5½%) per cent where line is supported by a One hundred fifty thousand and no/100 ($150,000.00) dollar on demand deposit. This *committment* is qualified on the consummation of the purchase by R. A. Mann or his assigns of the purchase of three thousand seven hundred eighty shares of stock from Jack Perry and Associates of the common capital stock of the Citizens State Bank and Trust Co. of Kilgore, Gregg County, Texas.

/s/ Robert A. Mann"

Thereupon Mann, while still at Perry's home, telephoned to Mrs. Margie Massey of the Dallas bank and directed that such bank draw a draft on the Sabine bank in the amount of Perry's debt to the Dallas bank and transmit such draft along with the certificates representing Perry's pledged shares in the Kilgore bank to the Sabine bank. Mann assured Mrs. Massey that the Sabine bank would honor and pay such draft upon it. Later that day Mann contacted the President of the Sabine bank telling him about the arrangement so made, instructing him to pay the Dallas bank's draft and assuring that he, Mann, would guarantee that the Sabine bank would be protected in doing so.

Immediately after completing the above described transactions at Perry's home Mann and Perry went to contact Willie Wells. Upon such meeting Wells executed a similar agreement giving Mann the option to acquire the 945 shares in the Kilgore bank held in the name of Welcome Oil Co.

The Dallas bank, in accordance with Mann's instructions, drew a draft on the Sabine bank and forwarded it, along with the share certificates. The Sabine bank paid such draft. A few days later Perry executed his demand note payable to the Sabine bank. Thus Perry's note was effectively transferred from the Dallas to the Sabine bank.

Thereafter, about February 12, 1967, Mann and Perry again met to discuss the deal. At that meeting Mann undertook to get Perry to reduce the price of the shares to be sold. Perry refused to do so. About a week later Mann and Perry met again. Before that meeting Mann had gotten, from another source, irrevocable proxies

on 981 shares of the Kilgore bank stock. Mann, therefore, by purchase of Perry's shares would be able to control the Kilgore bank without buying the Welcome Oil 945 shares. Mann offered to purchase Perry's shares at the price provided in the option agreement. Perry refused to sell unless Mann also took the Welcome Oil shares at the agreed price. When Mann refused to buy the Welcome Oil shares Perry refused to sell his shares.

Next in the sequence of events the Sabine bank, at Mann's direction, demanded of Perry immediate payment of his note and gave notice that, upon his failure to pay, the lien on his shares in the Kilgore bank would be foreclosed. On or about March 3, 1967, and before such foreclosure could be accomplished Perry arranged for the First Security National Bank of Beaumont, Texas, to pay his note to the Sabine bank and take over such loan and its security. Later the appellees, Walter M. Mischer, Perry Michael Wells and Gerald Hicks Smith, bought such shares from Perry and paid off the Beaumont bank loan.

The defendants defended against the claims asserted by Mann in his suit upon two basic theories. First, the option contract (executed by Perry) upon which and for breach of which Mann sues was allegedly not given for any valid consideration and was, therefore, not binding. Second, the defendants contended that the agreements between Mann and Perry and Mann and Willie Wells constituted one contract under the terms of which Mann was given the option to buy the entire 3780 shares owned by Perry and Welcome Oil and that Mann, having tendered purchase of only Perry's shares, never exercised his option.

The summary judgment evidence consists of the depositions of the individual parties to the suit and of Byrum L. Anderson. It is undisputed that the recitation as to a consideration in the February 6, 1967, option agreement signed by Perry was formal only and that the $10.00 so recited was

not paid. It was thus proper to show by parol or other extrinsic evidence the actual consideration given or promised. 13 Tex. Jur.2d Contracts, sec. 43 (1960). To make that agreement binding on Perry it was necessary that a valid consideration be either given or promised. 13 Tex.Jur.2d Contracts. sec. 37 (1960). It is the position of the appellant that the consideration given by him was his promise to use his own financial resources to save Perry from the loss of his stock by foreclosure by the Dallas bank. It is the contention of the appellees that Mann's promise was not to use his own money to remove the danger of foreclosure by the Dallas bank, but to "move" the loan from the Dallas bank to the Sabine bank. Since the Sabine bank is a member of the Federal Deposit Insurance Corporation, and since Mann was the chairman of the board of directors of such bank, the appellees contend that such promise was illegal as violating Title 18 U.S.C.A. sec. 215, and that, thus, the option agreement was void and unenforceable. The statute in question provides:

"Whoever, being an officer, director . . . of any bank, the deposits of which are insured by the Federal Deposit Insurance Company . . . receives . . . any . . . thing of value, from any person . . . for procuring . . . for such person . . . from any such bank . . . any loan . . . shall be fined not more than $5,000 or imprisoned [for] not more than one year, or both."

In the original opinion written in this case it was held that the evidence showed, as a matter of law, that the consideration by Mann for his option was his promise to procure for Perry a loan from the Sabine bank and that his acceptance of such option for such service was a violation of the above quoted statute. If such was the case, the option contract was void and would not support Mann's alleged cause of action. Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675 (1938). That holding is the principal subject of

Mann's motion for rehearing. In response to that motion we have carefully reviewed the evidence and have concluded that it does not compel a holding that the contract was illegal. The former opinion herein is withdrawn.

■ To prevail under the theory of illegality the movants for summary judgment had the burden of proving, as a matter of law, that the consideration given for the option was a promise by Mann to procure a loan to Perry from the Sabine bank. In determining whether this burden has been met we must resolve any conflicts in the evidence in favor of the respondent to the motion and must give the respondent the benefit of any reasonable inference that can be drawn from the evidence. The required fact may not be considered as so established as support for a summary judgment if there is any evidence to the contrary even though a finding that such fact did not exist, based upon such evidence, would be against the preponderance of the evidence. The test to be applied, subject to proper placement of the burden of proof, is the same as that which would be applied on motion for instructed verdict. Torres v. Western Casualty & Surety Company, 457 S.W.2d 50 (Tex.Sup.1970).

■ The evidence includes the depositions of the three men who were present at the time of the making of the option agreement—Mann, Perry and Byrum L. Anderson. Anderson's testimony is not helpful on the question. None of the three undertook to quote the words used by Mann in making whatever commitment he made as consideration for the option. It is clear that the commitment had to do with the discharge of the indebtedness of Perry to the Dallas bank. The controlling question is whether that commitment by Mann was to procure for Perry a loan from the Sabine bank as a means for payment of the Dallas bank or whether Mann merely promised to procure for Perry a means for payment without regard to the source of such means. If a contract is of such a character that it can be performed in a legal manner, the fact that it also may have been performed in another manner that was illegal does not make it void. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146 (1947). Thus, if Mann's promise was generally to make available to Perry a means of paying the Dallas bank, it was a valid promise and consideration for the option even though it might have been performed by procuring a loan from the Sabine bank. If such construction be given Mann's promise, it could have been performed by Mann's loan of his own funds with which to pay Perry's debt or by procuring a loan from another source than an F.D.I.C. bank of which Mann was a director or officer.

■ As noted above, all conflicts in the evidence must be resolved in favor of the appellant. He is entitled to the advantage of any reasonable inference that can be drawn. The evidence, when so analyzed, permits a conclusion that Mann could have performed the promise he gave to Perry as consideration for the option by furnishing his own money or by arranging a loan from some source other than the Sabine bank to raise funds for payment of the Dallas bank loan. The question of whether his performance of that promise by procuring a loan from the Sabine bank was a violation of 18 U.S.C.A. sec. 215 is immaterial here. Even if his performance was by means of an illegal act the contract was not void if he could have performed by a legal act. Lewis v. Davis, supra; Erminger v. Daniel, 185 S.W.2d 148 (Tex.Civ. App.—San Antonio, 1945, writ ref'd w. o. m.); 17 C.J.S. Contracts § 190. Thus the appellees failed to establish, as a matter of law, their defense of illegality.

There remains the defense based upon the fact that Mann offered to purchase only Perry's shares and refused to purchase those of Welcome Oil Co. On the same date, February 6, 1967, Perry and Willie Wells, now deceased, executed separate documents in substantially the same terms and language. By one of those doc-

uments Perry gave Mann a 30 day option to buy 2835 shares of the Kilgore bank stock at a price of $650,000.00. By the other Willie Wells, as president of Welcome Oil Co., gave Mann an option for 30 days to buy 945 of such shares for $216,667.00. By both instruments the maker warranted that there was outstanding 7500 shares of said bank stock. Thus, neither block of shares represented a majority, but the two blocks combined did.

Mr. Byrum L. Anderson, who arranged the deal, testified that Mr. Willie Wells contacted him and commissioned him to sell the 3780 shares—the control of the bank. He was promised a commission, ultimately fixed at $16,000.00, which was payable only if all of the stock, that of both Perry and Welcome, was sold. Mann knew of the commission agreement and during the meeting at Perry's home agreed to withhold from the purchase price the amount thereof for Anderson's benefit. Anderson said that the discussion between Mann and Perry as to the price of the shares related to the price to be paid upon purchase of both blocks—the entire 3780 shares.

The instrument quoted above by which Mann agreed to arrange for a line of credit to Perry of $150,000 was conditioned upon Mann's purchase of the 3780 shares from "Jack Perry and Associates."

Perry and Welcome Oil Co. were parties to a buy and sell agreement under the terms of which a sale of his shares by Perry without the consent of Welcome would have been a breach.

It is apparent that in this transaction Perry and Willie Wells set out to sell and Mann to buy the control of the Kilgore bank. Mann acquired the option to accomplish his purpose in the two agreements signed respectively by Perry and Willie Wells on February 6, 1967. The line of credit agreement signed by Mann the same day reflects the purpose of the parties in this respect. The three instruments thus executed all related to the same transaction. They must be read together. They constituted an agreement to give Mann a 30 day option to buy 3780 shares —the control of the Kilgore bank—from Perry and Welcome Oil Co. Board of Ins. Com'rs v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803 (1951); Veal v. Thomason, 138 Tex. 341, 159 S.W. 2d 472 (1942); Pan American Petroleum Corp. v. Vines, 459 S.W.2d 911 (Tex.Civ. App.—Tyler 1970, writ ref'd n. r. e.); Hutson v. Lacey, 440 S.W.2d 717 (Tex. Civ.App.—Houston (14th Dist.) 1969, no writ). Mann never exercised the option so given. Having acquired proxies in other shares, he refused to buy the Welcome Oil Co. shares. Since Mann did not exercise his option in accordance with its terms, he is not entitled to recover on the option contract or for its alleged breach.

The judgment of the trial court is affirmed.